THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DE-WAYNE ADAMS, Defendant-Appellant.

Fourth District No. 4—93—0342

Argued October 19, 1993.—Opinion filed June 29, 1994.

STEIGMANN, J., specially concurring.

Marshall A. Susler (argued) and David A. Spence, both of Lowe, Moore, Susler, McNutt & Wrigley, of Decatur, for appellant.

Lawrence R. Fichter, State's Attorney, of Decatur (Norbert J. Goetten, Robert J. Biderman, and Richard Norris (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE COOK delivered the opinion of the court:

After a jury trial, defendant Dewayne Adams was convicted of armed violence (Ill. Rev. Stat. 1991, ch. 38, par. 33A—2) based on the jury's finding that he was in possession of cocaine while armed with a switchblade knife. He was sentenced to 78 months in prison. Defendant appeals, arguing the State failed to prove all the elements of armed violence, the trial court erred in excluding evidence, the jury was not properly instructed, and impeaching evidence was given to the jury without a limiting instruction. We affirm.

On December 14, 1992, at approximately 6 p.m., defendant went to the CC Club at the corner of Jackson and Sheridan Streets in Decatur, Illinois. When he arrived at the parking lot outside the club, defendant purchased a small packet of cocaine. When defendant reached the front of the club he saw a friend of his, Thomas Cole, standing in the doorway of Cole's residence, near the CC Club. Defendant walked over and entered Cole's house. Approximately three minutes later, several officers from the Illinois State Police Narcotics Task Force and the Decatur police department executed a search warrant at Cole's residence.

Officer Richard McElroy entered the Cole residence through the front door and secured Thomas Cole by having him lie on the floor. McElroy was followed by Officer Jerry Waggoner, who told defendant to get down on the ground. As defendant started to get down, Waggoner observed him place some items on a footstool next to where he had been standing. Officer Waggoner testified that he observed defendant place cocaine, an envelope of money, and a knife on the footstool. After placing defendant on the ground, Officer Waggoner took a closer look at the knife. He found that it was a switchblade knife and the blade was open.

Defendant testified that at the time the police arrived he had his keys and the packet of white powder in his coat pocket, and after he went to the ground those items ended up on the footstool.

After advising defendant of his rights, the officers asked him about the knife. Officer Waggoner testified defendant admitted the knife was his. During trial, defendant denied having said the knife was his. Defense counsel asked defendant "and were you aware personally of what the contents of that—could you tell before then or at the time you were arrested what the contents of those coveralls were?" The State's Attorney objected to the question on the grounds of relevancy, and the objection was sustained. Defendant later testified the knife was not his, that he used knives at work to cut tapes and boxes, but did not recall ever using that particular knife. Defendant testified the only explanation he could think of for the presence of the knife was that he was wearing coveralls furnished him at work which were worn by other employees, and the knife came from work.

During the instructions conference, defendant offered Illinois Pattern Jury Instructions, Criminal, No. 4.15 (Illinois Pattern Jury Instructions, Criminal, No. 4.15 (3d ed. 1992) (hereinafter IPI Criminal 3d)), the instruction concerning "possession." The instruction was offered in connection with the charge of unlawful possession of cocaine (*not* the charges of armed violence). The instruction was refused.

While the jury was deliberating, it asked if it could be furnished with defendant's testimony from the suppression hearing which was read during trial. The circuit judge conveyed the jury's request to the attorneys for both parties. Neither side objected. The judge prepared the testimony and gave it to the jury. The jury found defendant guilty on two counts of armed violence and one count of unlawful possession of a controlled substance. Ill. Rev. Stat. 1991, ch. 38, par. 33A—2; ch. 56$^1$/2, par. 1402(c).

At a hearing on defendant's post-trial motion, the trial court vacated the convictions on one count of armed violence and the underlying unlawful possession of cocaine. The court then sentenced defendant on the remaining armed violence conviction and this appeal followed.

Defendant first argues that the State failed to prove the elements of armed violence beyond a reasonable doubt. He argues the knife must have been in the coveralls without his knowledge and fallen out. He questions that the officers would have allowed him to remove an open switchblade from his pocket and place it on the footstool. Defendant contends that the State's evidence concerning his knowledge of the presence of the weapons was contradictory, inherently improbable, and insufficient to sustain his conviction.

On review, when considering the sufficiency of the evidence to

support a conviction, " ' "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *** (Emphasis in original.)' " *(People v. Furby* (1990), 138 Ill. 2d 434, 455, 563 N.E.2d 421, 430, quoting *People v. Collins* (1985), 106 Ill. 2d 237, 261, 478 N.E.2d 267, 277, quoting *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.) In such a context, it is not the function of the reviewing court to retry the defendant. *(Collins,* 106 Ill. 2d at 261, 478 N.E.2d at 277.) Rather, determinations of the credibility of witnesses, the weight to be given their testimony, and the reasonable inferences to be drawn from the evidence are responsibilities of the trier of fact. *People v. Tye* (1990), 141 Ill. 2d 1, 13, 565 N.E.2d 931, 937.

●1 In *People v. Hernandez* (1992), 229 Ill. App. 3d 546, 551, 593 N.E.2d 1123, 1128, the court applied the *Collins* standard to the knowledge requirement in an armed violence case, noting:

> "The element of knowledge is very often not susceptible to direct proof. [Citation.] Whether defendant had possession or knowledge is a question of fact to be determined by the jury, and its findings will not be disturbed on review unless the evidence is so palpably contrary to the verdict or so unreasonable, improbable or unsatisfactory as to create a reasonable doubt of defendant's guilt."

While defendant denied telling police the knife was his, it was within the province of the jury to determine the credibility of the witnesses. Viewed in the light most favorable to the prosecution, there is sufficient evidence to support a determination that defendant had knowledge of the knife's presence and that he was guilty of the offense.

Defendant contends the trial court erred by not admitting certain evidence concerning his lack of knowledge of the presence of the weapon. Defendant initially argues knowledge is an essential element of the offense of armed violence. Section 33A—2 of the Criminal Code of 1961 (Code) states: "A person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois Law." (Ill. Rev. Stat. 1991, ch. 38, par. 33A—2.) Section 33A—1(a) of the Code defines "armed with a dangerous weapon" as follows: "A person is considered armed with a dangerous weapon for purposes of this Article, when he carries on or about his person or is otherwise armed with a category I or category II weapon." (Ill. Rev. Stat. 1991, ch. 38, par. 33A—1(a).) A switchblade is a category I weapon. Ill. Rev. Stat. 1991, ch. 38, par. 33A—1(b).

"A person is not guilty of an offense, other than an offense which

involves absolute liability, unless, with respect to each element described by the statute defining the offense, he acts while having one of the mental states described in Sections 4—4 through 4—7 [of the Code]." (Ill. Rev. Stat. 1991, ch. 38, par. 4—3(a).) While the armed violence statute contains no specific mental state, a mental state is implied pursuant to section 4—3(b) of the Code (Ill. Rev. Stat. 1991, ch. 38, par. 4—3(b)). We agree that defendant's knowledge that he is armed (or some other appropriate mental state) is an element of armed violence. In *People v. Condon* (1992), 148 Ill. 2d 96, 109-10, 592 N.E.2d 951, 957-58, the court stated the following as to the purpose of the armed violence statute:

> "The armed violence statute [citation] was enacted in 1967 ' "to respond emphatically to the growing incidence of violent crime." ' [Citation.] The intended purpose of the armed violence statute is to deter felons from using dangerous weapons so as to avoid the deadly consequences which might result if the felony victim resists. ***
>
> A felon with a weapon at his or her disposal is forced to make a spontaneous and often instantaneous decision to kill without time to reflect on the use of such deadly force. [Citation.] Without a weapon at hand, the felon is not faced with such a deadly decision. Hence, we have the deterrent purpose of the armed violence statute. Thus, for this purpose to be served, it would be necessary that the defendant have some type of immediate access to or timely control over the weapon." (Emphasis omitted.)

The purposes of the statute are not furthered by punishing unknowing possession. While the normal inference, when a person had a knife in his pocket, is that the person knew that he had a knife in his possession, the person should be allowed to introduce evidence to rebut that inference.

●2 Defendant continues that by sustaining the prosecutor's objection to the question whether he was personally aware of the contents of the coveralls, the trial court precluded him from presenting his defense of lack of knowledge. Even if the circuit court erred in sustaining the objection, defendant has not shown he was harmed by the ruling. Defendant elsewhere testified concerning his lack of knowledge about the presence of the weapon. Since substantially the same evidence was admitted, any error is harmless. *People v. Gibson* (1983), 117 Ill. App. 3d 270, 281-82, 452 N.E.2d 1368, 1377.

Defendant argues the trial court erred giving definitional and issues instructions which failed to include the element of knowledge. (See IPI Criminal 3d Nos. 11.51, 11.52.) He concedes he failed to preserve the issue by an objection at trial, or by tendering an appropriate instruction during the instructions conference, but

argues that the circuit court's failure to *sua sponte* give instructions including the knowledge element was plain error.

●3 Where the mental state is implied, a court is not always required to instruct the jury as to the mental state. In *People v. Burton* (1990), 201 Ill. App. 3d 116, 558 N.E.2d 1369, defendant argued he was entitled to instructions setting forth the mental state necessary to convict him of the offense of aggravated criminal sexual assault because a jury must be instructed as to each element of the offense charged. This court found that it was usually not necessary to instruct a jury concerning mental states implied by section 4—3 of the Code. We noted, however:

> "[S]ome mental states involved in offenses, although not specifically mentioned in the statute defining the offense, may be implied in the offense and be specific enough to require instruction to the jury. Under some circumstances, the mental state implied by section 4—3 of the Code may possibly be so specific as to require instruction." (*Burton*, 201 Ill. App. 3d at 122, 558 N.E.2d at 1374.)

We conclude the mental state required to sustain a charge of armed violence, being *knowingly* armed, while implied through section 4—3 of the Code, is not so specific as to require instruction. In cases where a person is charged with being armed with a dangerous weapon there may be a question whether he was so armed, but there will usually be no question whether he knew he was armed.

●4 Even if a knowledge instruction should have been given, where a defendant fails to object to a jury instruction or offer instructions that correctly state the law, any issue is waived unless there is plain error or error which affects the substantial rights of defendant. (*People v. Shields* (1991), 143 Ill. 2d 435, 446, 575 N.E.2d 538, 543.) Put another way, "the waiver rule does not apply to substantial defects in instructions if the interests of justice require." (Emphasis omitted.) *People v. Roberts* (1979), 75 Ill. 2d 1, 11, 387 N.E.2d 331, 336.

> "[I]nstructions should not be judged in artificial isolation but must instead be considered in light of the record as a whole, including the evidence and arguments presented to the jury. [Citation.] 'Thus not only is the challenged instruction but one of many such instructions, but the process of instruction itself is but one of several components of the trial which may result in the judgment of conviction.'" (*Shields*, 143 Ill. 2d at 446, 575 N.E.2d at 543, quoting *Cupp v. Naughten* (1973), 414 U.S. 141, 147, 38 L. Ed. 2d 368, 373, 94 S. Ct. 396, 400.)

Defendant testified at trial he did not know where the knife came from, had not seen the knife before, and had not used this knife at work, *i.e.*, he did not know anything about this knife. In closing

argument defendant's counsel suggested the knife was in Cole's house when defendant arrived and was never in his possession. The jury was aware of defendant's theories of the case. There is no basis for concluding that the jury would not have convicted defendant if it had believed defendant, when he said he had no knowledge of the presence of the knife.

●5 Defendant argues the court erred in refusing to give IPI Criminal 3d No. 4.15, which defines possession as a voluntary act. Defendant did tender that instruction. However, defendant tendered No. 4.15 with respect to the unlawful possession of cocaine charge, not the armed violence charges.

Defendant's final contention is that the trial court committed plain error when it allowed the jury to consider impeaching testimony from an earlier hearing, without a limiting instruction. During trial, defendant testified on direct examination he had never used the knife at work. On cross-examination, he testified he never told an officer that he used the knife for opening boxes at his store. The State's Attorney introduced testimony from an earlier suppression hearing. The most incriminating testimony from the excerpt was in response to the question "how did you touch that knife?" Defendant had answered, "I touched that knife when I am at work." The testimony from the suppression hearing was admitted into evidence as an exhibit without objection.

During the jury's deliberations it asked if it could be furnished with the suppression hearing testimony which had been read in court, and the request was granted.

Generally, when impeachment evidence is used at trial, the court is under no duty to issue a limiting instruction *sua sponte*. (*People v. Riley* (1978), 63 Ill. App. 3d 176, 183, 379 N.E.2d 746, 751.) However, under some circumstances such a duty does arise.

> "That duty exists where the prior statement is extraordinarily long and repetitious such that the conviction becomes based upon unsworn statements by the witness whose credibility is under attack. [Citations.] In addition, the court's duty may arise where the prosecutor has urged the consideration of the unsworn statement as substantive evidence." (*People v. Garza* (1981), 92 Ill. App. 3d 723, 733, 415 N.E.2d 1328, 1337.)

Defendant contends this is such a case.

●6 When the State's Attorney introduced the defendant's prior statement, defendant neither objected nor attempted to limit the use of the evidence to impeachment. The rule that prior inconsistent statements may not be used substantively applies only to witnesses, not parties. A party's "prior inconsistent statement" is an admission,

which may be considered substantively. (*People v. Prante* (1986), 147 Ill. App. 3d 1039, 1061-62, 498 N.E.2d 889, 904.) Even if the statement here had been made by a witness, and not by defendant, the statement could have been considered by the jury as substantive evidence. Section 115—10.1 of the Code of Criminal Procedure of 1963 (1963 Code) states:

"In all criminal cases, evidence of a statement made by a witness is not made inadmissible by the hearsay rule if

(a) the statement is inconsistent with his testimony at the hearing or trial, and

(b) the witness is subject to cross-examination concerning the statement, and

(c) the statement—

(1) was made under oath at trial, hearing, or other proceeding." (Ill. Rev. Stat. 1991, ch. 38, pars. 115—10.1(a), (b), (c)(1).)

The effect of section 115—10.1 is to allow the substantive use, in criminal cases, of some prior inconsistent statements. (M. Graham, Cleary & Graham's Handbook of Illinois Evidence § 801.9 (5th ed. 1990); *People v. Coleman* (1989), 187 Ill. App. 3d 541, 543 N.E.2d 555.) In this case, the testimony offered was inconsistent with testimony at trial, the witness was subject to cross-examination, and the testimony was given at a suppression hearing while the witness was under oath. This evidence could have been considered by the jury as substantive evidence.

Defendant also argues the statements are not inconsistent. A review of the record indicates there is an inconsistency: defendant testified at trial that he had never seen the knife before and had not used the knife at work; the inconsistent statements included testimony that defendant had not seen the knife until he touched it, and he touched it at work. It was not error here to submit the statement to the jury without a limiting instruction.

For the foregoing reasons, the judgment of the circuit court of Macon County is affirmed.

Affirmed.

GREEN, J., concurs.

JUSTICE STEIGMANN, specially concurring:

Although I fully concur in the judgment reached by the majority opinion as well as most of its reasoning, I do not agree with its discussion. (265 Ill. App. 3d at 187.) This court should affirm

defendant's conviction because defendant failed to submit an instruction correctly stating the law as he claims it to be. (265 Ill. App. 3d at 187-188.) As a result, he has waived this jury instruction issue unless plain error exists affecting his substantial rights. Clearly, on the facts of this case, there is no plain error, so we need not discuss the matter further.

In *Burton*, this court rejected the defendant's argument that the charge of aggravated criminal sexual assault contained a mental state. In doing so, this court resurrected the discredited notions of specific and criminal intent. Although I dissented in part in *Burton* (201 Ill. App. 3d at 123-29, 558 N.E.2d at 1374-78 (Steigmann, J., concurring in part and dissenting in part)), I recognize that it continues to be good law insofar as criminal sexual assault and aggravated criminal sexual assault cases are concerned. However, the case on appeal before us involves the charge of armed violence. Thus, the majority's discussion of *Burton* is not only *dicta*, it is unnecessary *dicta*.